# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

FILED - USDC -NH
2023 MAR 24 PM12:37

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* SIDESOLVE LLC, | ) **FILED BY HAND** |
| | ) |
| Plaintiff-Relator, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| JAY CASHMAN, INC.; STERLING EQUIPMENT, INC.; and CASHMAN DREDGING & MARINE CONTRACTING LLC, | ) **JURY TRIAL DEMANDED** |
| | ) |
| | ) **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| Defendants. | ) |
| | ) |

## COMPLAINT

1.    Relator Sidesolve LLC brings this action on behalf of itself and the United States of America against defendants Jay Cashman, Inc.; Sterling Equipment, Inc.; and Cashman Dredging & Marine Contracting LLC (collectively the "Cashman Entities"), for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2.    This action seeks to recover funds that were loaned to Defendants through the federal Government's Paycheck Protection Program ("PPP") and forgiven as a result of false applications.

3.    Sidesolve LLC is a company that uses data to investigate large-scale corporate fraud. Its goal is to use the technology it is developing to protect individuals on private healthcare plans. It is currently developing its technology using public databases. It uses computational statistics to match entities across

multiple resources such as databases, social media, corporate filings, and other sources. From this broader picture, it finds fraud leads, which it follows up with a more traditional manual investigation. In sum, Sidesolve LLC uses its expertise and proprietary technology to both collect the scattered pieces of the fraud puzzle and also to put them together into a complete picture of the alleged fraud.

4.     While searching for potential PPP loan fraud in data released by the SBA, Sidesolve came across Jay Cashman Inc. and two of its apparent subsidiaries— Sterling Equipment, Inc. and Cashman Dredging & Marine Contracting LLC— which had applied for PPP loans totaling just over $4 million, nearly $3.89 million of which was forgiven.

5.     Had these entities properly applied the SBA's Affiliation Rules for PPP loans—the purpose of which is to prevent exactly this sort of "unbundling" of companies to circumvent PPP requirements—these three affiliated Cashman Entities would not have been eligible for any PPP funding.

6.     The Cashman Entities received a windfall, to the detriment of the federal government and the thousands of small businesses that were unable to get the financial assistance they badly needed during the pandemic.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

8.    Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as one or more of the defendants resides or transacts business in this jurisdiction.

## PARTIES

9.    Defendant Jay Cashman, Inc. is registered as a corporation in Massachusetts. Its principal address is 549 South St., Quincy, MA 02269. In corporate filings with the Massachusetts Secretary of State, filed in 2019 and 2020, Dale Pyatt was listed as President, CEO, and Director, and Jay Cashman was listed as its Secretary and Director.

10.    Jay Cashman, Inc. is a privately held multi-disciplinary construction and development company that is part of the "comprehensive portfolio of companies" known as the "Cashman Family of Companies" which also includes Cashman Dredging & Marine Contracting LLC; Sterling Equipment, Inc.; IPC Lydon LLC; Patriot Renewables LLC; and Preload International.

11.    Defendant Cashman Dredging & Marine Contracting LLC is registered as a corporation in Massachusetts. Its principal address is 549 South St., Quincy, MA 02269. In corporate filings with the Massachusetts Secretary of State filed in 2020, Dale Pyatt and Jay Cashman were listed as the two company managers.

12.    Defendant Sterling Equipment, Inc. is a barge and marine equipment rental company whose address is 555 South Street, Quincy, MA 02169, which is

located in the Quincy Shipyard along with Jay Cashman, Inc. and Cashman

Dredging.[1] Massachusetts corporate filings from 2019 and 2020 list Jay Cashman

as a Board Member and Secretary of Sterling Equipment.

### THE PAYCHECK PROTECTION PROGRAM

13.     During the COVID-19 pandemic, Congress passed the Coronavirus Aid,

Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES

Act contains a program called the Paycheck Protection Program ("PPP"), a

program administered by the U.S. Small Business Administration ("SBA") to

provide economic relief to small businesses nationwide adversely impacted by

the coronavirus pandemic.

14.     Section 1102 of the CARES Act temporarily permitted SBA to guarantee

100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness

of up to the full principal amount of qualifying loans guaranteed under the PPP.

15.     The CARES Act gives lenders delegated authority to process loan

applications for PPP funding. SBA allowed lenders to rely on certifications of the

borrowers in order to determine eligibility of the borrower and use of loan

proceeds, and to rely on specified documents provided by the borrower to

determine qualifying loan amount, and eligibility for loan forgiveness.

---

[1] The Quincy Shipyard is owned by Quincy Shipyard LLC which is also owned
and managed by Jay Cashman.

16.    Lenders were compensated by the federal government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the following amounts:

- Five (5) percent for loans of not more than $350,000;

- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and

- One (1) percent for loans of at least $2,000,000.

17.    Borrowers had to submit documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, income and expenses documentation.

18.    In general, the maximum amount borrowers could borrow was calculated by aggregating payroll costs from the previous year, with annual employee salaries capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

19.    Each borrower certified on the First and Second Draw loan applications that they were eligible to receive the loans under the program guidelines and that their applications and supporting documentation were accurate.

20.    Borrowers were able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities.

## FACTUAL ALLEGATIONS

21.     The Cashman Entities applied for and received First Draw PPP loans on the same date and from the same bank.

22.     In total, the Cashman Entities received $4,038,968 in PPP funding and received forgiveness of $3,899,282.

23.     Jay Cashman, Inc. was approved for a First Draw PPP loan of $406,595 on April 7, 2020 by Customers Bank. It reported 389 jobs. As of June 2021, $384,419 of the loan amount was forgiven.

24.     Cashman Dredging & Marine Contracting LLC was approved for a First Draw PPP loan of $3,066,442 on April 7, 2020 by Customers Bank. It reported 283 jobs. As of June 2021, $2,942,404 of the loan amount was forgiven.

25.     Sterling Equipment was approved for First Draw PPP Loan of $565,931 loan on April 7, 2020 from Customers Bank. It reported 52 jobs. As of June 2021, the entire loan amount, plus interest, was forgiven for a total of $572,459.[2]

---

[2] IPC Lydon LLC ("IPC Lydon") is another member of the Cashman Family of Companies that took out a PPP loan. It may also be an "affiliated entity" under the PPP Loan rules due to Cashman's position in this company, but its ownership is distinguishable from the other entities. Warren Equity Partners acquired IPC Lydon from Jay Cashman, Inc. in October 2016, prior to which it was "previously a wholly owned subsidiary of Jay Cashman Inc." After the acquisition, Jay Cashman still retained a significant equity interest in IPC Lydon and still serves as a manager of the company. IPC Lydon was approved for a First Draw PPP loan of $3,127,512 on April 13, 2020 by Manufacturers and Traders Trust Company. It reported 196 jobs. As of June 2021, the entirety of the

26.     Version one of the First Draw PPP Borrower Application Form, effective

April 2, 2020, required the applicant to certify in good faith that, inter alia:

  a.  The Applicant is eligible to receive a loan under the rules in effect
      at the time this application is submitted that have been issued by
      the Small Business Administration (SBA) implementing the
      Paycheck Protection Program under Division A, Title I of the
      Coronavirus Aid, Relief, and Economic Security Act (CARES Act)
      (the Paycheck Protection Program Rule).

  b.  The Applicant (1) is an independent contractor, eligible self-
      employed individual, or sole proprietor or (2) employs no more
      than the greater of 500 or employees [sic] or, if applicable, the
      size standard in number of employees established by the SBA in
      13 C.F.R. 121.201 for the Applicant's industry.

  c.  During the period beginning on February 15, 2020 and ending on
      December 31, 2020, the Applicant has not and will not receive
      another loan under the Paycheck Protection Program.

  d.  I further certify that the information provided in this application
      and the information provided in all supporting documents and
      forms is true and accurate in all material respects. I understand
      that knowingly making a false statement to obtain a guaranteed
      loan from SBA is punishable under the law, including under 18
      USC 1001 and 3571 by imprisonment of not more than five years
      and/or a fine of up to $250,000; under 15 USC 645 by
      imprisonment of not more than two years and/or a fine of not
      more than $5,000; and, if submitted to a federally insured
      institution, under 18 USC 1014 by imprisonment of not more than
      thirty years and/or a fine of not more than $1,000,000.

27.     Some or all of the above PPP certifications were false when made by the

Cashman Entities.

---

loan amount plus interest was forgiven for a total of $3,162,729.

28.    The Cashman Entities applied for and received three PPP loans when they were not eligible to receive PPP funding.

### A. THE AFFILIATION RULES

29.    In addition to small business concerns, a business was eligible for a First Draw PPP Loan if the business had 500 or fewer employees **or** the business met the SBA employee-based or revenue-based size standard for the industry in which it operates (if applicable) **or** the business was eligible under the SBA's alternative size standard, which requires that the companies' maximum tangible net worth is not more than $15 million; and average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

30.    When multiple entities are operated under common ownership or management, the SBA generally applies "affiliation rules" that require the various entities to consolidate their employee and revenue count when evaluating their loan eligibility. Their purpose is to capture exactly the situation we appear to have with the Cashman Entities, where a single entity owns and operates multiple subsidiaries.

31.    Each of the Cashman Entities, as well as the balance of the companies that make up the "Cashman Family of Companies" (*i.e* IPC Lydon LLC, Patriot

Renewables LLC and the entities that make up Preload International-Global

Engineering Services, LLC, Preload Cryogenics, LLC, and Preload Middle East

LLC), are believed to qualify as "affiliates" under the SBA's Affiliation Rules for

PPP Loans, codified at 13 C.F.R. § 121.301(f), under the ownership and

management tests.

32.     The "affiliation based on ownership" test states that:

> For determining affiliation based on equity ownership,
> a concern is an affiliate of an individual, concern, or
> entity that owns or has the power to control more than
> 50 percent of the concern's voting equity. If no
> individual, concern, or entity is found to control, SBA
> will deem the Board of Directors or President or Chief
> Executive Officer (CEO) (or other officers, managing
> members, or partners who control the management of
> the concern) to be in control of the concern.

33.     The "affiliation based on management" test states that:

> Affiliation arises where the CEO or President of the
> applicant concern (or other officers, managing
> members, or partners who control the management of
> the concern) also controls the management of one or
> more other concerns. Affiliation also arises where a
> single individual, concern, or entity that controls the
> Board of Directors or management of one concern also
> controls the Board of Directors or management of one of
> more other concerns. Affiliation also arises where a
> single individual, concern or entity controls the
> management of the applicant concern through a
> management agreement.

*Ownership*

34.     Jay Cashman founded Jay Cashman, Inc. and Cashman Dredging. He

owns 50% of Jay Cashman, Inc. Upon information and belief, each member of the Cashman Family of Companies is a subsidiary of Jay Cashman, Inc. (except for IPC Lydon, as discussed above).

*Management*

35.     At all relevant times, the same individuals operated the Cashman Family of Companies.

36.     Jay Cashman is Chairman of the Board of Jay Cashman, Inc.; Dale Pyatt is the President, CEO, and a Director; Andrew Goldberg is the Treasurer, CFO, and a Director; Jay Cashman is the Secretary and a Director; and Robert De Crescenzo is a Director.

37.     Jay Cashman is Chairman of the Board of Cashman Dredging and Dale Pyatt and Jay Cashman are the managers of Cashman Dredging.

38.     For Sterling Equipment, Robert De Crescenzo is the President and a Director; Andrew Goldberg is the CFO and a Director; Jay Cashman is the Secretary and a Director; and Dale Pyatt is the Treasurer and a Director.[3]

## B. AFFILIATION RULE WAIVER REQUIREMENTS

39.     Accordingly, to qualify as a small business eligible for a PPP loan, at least one, if not more, of the Cashman Entities would have to meet one of three affiliation rule waiver requirements.

---

[3] There is also a Sterling Equipment, LLC for which De Crescenzo, Pyatt, and Cashman are the managers.

40.    At least two of the three waivers to the affiliation rules do not apply: none of the entities are assigned a NAICS code beginning with 72 (both reported NAICS code 237990), nor have any been assigned a franchise identifier code.

41.    The third waiver applies where a business "receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958," i.e., a "small business investment company." "Financial assistance" includes any type of financing listed in 13 C.F.R. § 107.50, including loans and equity.

42.    Sidesolve has not found any evidence that any of the Cashman Entities have received any SBIC lending. For example, it has not located mention of them in any SEC EDGAR filings, news articles, or press releases.

### C. <u>APPLICATION OF THE AFFILIATION RULES</u>

43.    Businesses could qualify for a First Draw PPP loan under any of three size standards. First, the employee-based size standard permitted businesses to apply for loans if they had no more than 500 employees, or the business met the SBA employee-based standard for the industry in which it operates (if applicable). Second, the business could meet the revenue-based size standard, meaning the average annual receipts for the previous three full fiscal years is less than the revenue-based threshold established by the NAICS Code for the applicant's industry. Third, the business could meet the SBA's alternative size standard,

-11-

which requires that the maximum tangible net worth of the business is not more than $15 million; **and** average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

*Employment Test*

44.    The Cashman Entities do not qualify for PPP loans under the employment test.

45.    Each of the Cashman Entities reported NAICS code 237990, which had no employee size standard for their NAICS code as of April 7, 2020, the date of their PPP loans. Thus, the PPP program's baseline of no more than 500 employees applies.

46.    Collectively, the Cashman Entities reported 672 jobs.

47.    On its LinkedIn page, Jay Cashman Inc. reported between 501-1,000 jobs.

48.    As recently as 2019, news articles about Jay Cashman, Inc. have stated that it employs around 1,000 people.

49.    If they are not already included, these numbers may be even higher when including other members of the Cashman Family of Companies.

*Revenue Test*

50.    Upon information and belief, the Cashman Entities also would not qualify under the revenue-based size standards.

51.     Each of the Cashman Entities reported NAICS code 237990 which had a 2020 revenue size standard of $39.5M in annual receipts (with the exception of $30.0M for dredging). "Annual receipts" is defined as the "total income" (or "gross income") plus the "cost of goods sold." Receipts are averaged over a business' latest three complete fiscal years to determine the average annual receipts.

52.     Jay Cashman, Inc. has been immensely successful and, although it is a private company, estimates of its profits from various sources, such as ZoomInfo and RocketReach, show revenues in the hundreds of millions of dollars even before adding in any revenue for Cashman Dredging, Sterling Equipment, or any of the other members of the Cashman Family of Companies such as IPC Lydon, Patriot Renewables, and the Preload International entities.

53.     Moreover, the Cashman Family of Companies has a webpage devoted to their projects that includes the dollar value of each contract. The work that the Cashman Family of Companies performed in the time period encompassing 2017-2019 period had a contract value exceeding $400 million, which exemplifies the revenues of company during the relevant time period.

54.     These revenue estimates place Jay Cashman Inc. and its affiliates well above the $39.5 million revenue threshold.

*Alternative Size Standard*

55.    Finally, upon information and belief, the Cashman Entities would not qualify under the SBA's alternative size standard, which requires that the companies' maximum tangible net worth is not more than $15 million; and average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

56.    The SBA generally defines "tangible net worth" as "total net worth minus goodwill," meaning that intangible assets other than goodwill are not subtracted from the "total net worth calculation."

57.    The average net income from the relevant years, as discussed above, appears to well exceed $5 million.

58.    Moreover, the Cashman Entities and their affiliates have considerable tangible net worth. For example, the Cashman-managed Quincy Shipyard, LLC owns the massive Quincy Shipyard,[4] where the Cashman Family of Companies is headquartered. It also "owns and operates an industrial facility in Taunton, MA, a shipyard in Staten Island, NY, and a marine terminal in Elizabeth, NJ."

---

[4] The Quincy Shipyard "consists of over 26 acres of mixed-use space. The site includes industrial and non-industrial tenants, as well as owns and manages three-deep water piers with over 3,100' of docking space." https://www.jaycashman.com/capabilities/project-development/.

59.    In addition, in the Cashman Brochure, the Cashman Family of Companies claim to own "an expansive fleet of specialized equipment, including dredges, scows, barges, tugs, cranes, and other heavy equipment."

## CONCLUSION

60.    Although it consisted of different legal entities, the Cashman Entities were a single enterprise. Accordingly, upon information and belief, Defendants did not meet the requirements for eligibility under the PPP loan program, and they should be required to repay the more than $3.89 million they received, plus the processing fees paid by the Government.

61.    In its applications, the Cashman Entities made false statements material to the PPP lending decisions.

62.    Insofar as the affiliate rules could have been considered unclear at the time the Cashman Entities applied for the First Draw PPP Loans, subsequent clarifications issued by the SBA should have informed it that it had improperly applied for and received PPP funds so that it should have repaid those funds. Instead, the Cashman Entities not only kept the PPP funds, but it applied for and received forgiveness for those funds under false pretenses.

## COUNT I
### VIOLATIONS OF 31 U.S.C. § 3729 – FALSE CLAIMS ACT

63.    Relator hereby incorporates and realleges all other paragraphs as if fully set forth herein.

64.    As set forth above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

65.    As set forth above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

66.    As set forth above, Defendants knowingly conspired to commit a violation of the False Claims Act, in violation of 31 U.S.C. § 3729(a)(1)(C).

67.    As set forth above, Defendants knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

68.    Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim, record, or statement. 31 U.S.C. § 3729.

69.    Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendants:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a maximum civil penalty for each of the false claims and statements;

(c) awarding Relator the maximum relator's share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator litigation costs and reasonable attorneys' fees and expenses; and

(e) granting such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

Respectfully submitted,


*/s/ Nicholas G Kline*
Nicholas G. Kline, Esq. #268422
nkline@shaheengordon.com
**Shaheen & Gordon, P.A.**
353 Central Avenue, 2nd Floor
Dover, NH  03821-0977
(603) 749-5000

Anna C. Dover *
New York Registration No. 4396909
Anna@FCAcounsel.com
**Bracker & Marcus LLC**
11 Broadway, Suite 615
New York, NY 10004
Telephone: (646) 448-5253
Facsimile: (678) 648-5544
* *pending admission pro hac vice*

***Attorneys for Plaintiff-Relator***